## Commonwealth v. Weaver

*Roy A. Gardner*, district attorney, for Commonwealth.

*John R. Morgan*, for defendant.

TREMBATH, P. J., April 2, 1957.—Ralph Weaver was indicted and tried on a charge of prison breach and escape. The Commonwealth proved that defendant was received in the Wyoming County Jail on November 3, 1956, by virtue of a commitment signed by Edith Chapin, Justice of the Peace, and that he was committed for assault with intent to ravish in default of bail. The Commonwealth further proved that on the night of November 29, 1956, defendant broke and escaped jail and was apprehended again on the next day. Defendant had not been indicted by the grand jury as of the time of escape. Commonwealth also proved that the sheriff, on November 20, 1956, while defendant was then in jail by virtue of the commitment aforesaid, received a detainer from the United States Marshall's office for the Middle District of Pennsylvania and against defendant. The detainer consisted of a letter from the United States Marshall to the sheriff requesting that the prisoner be detained, and a warrant for defendant's arrest issued by the Department of Justice of the United States of America, authorizing defendant's arrest for breach of parole.

At the close of the Commonwealth's case defendant demurred to the evidence. The demurrer having been overruled, defendant offered to prove by Mike Traver, Constable, that defendant was arrested for the same offense on a charge of assault with intent to ravish, issued by Justice of the Peace Schooley, of Noxen Township, Wyoming County, and brought to the Wyoming County Jail, but the sheriff refused to receive him because the constable did not have a commitment. The constable then took defendant to Justice of the Peace Edith Chapin in Eaton Township, procured another information to be made and had a warrant issued thereon. After hearing the said Edith Chapin issued the commitment upon which defendant was received and lodged in jail. Commonwealth's

objection to this offer was sustained. Defendant thereafter filed a motion in arrest of judgment and by virtue of the motion in arrest of judgment raises two questions.

First: Did the Commonwealth's evidence prove violation of the present Act of July 29, 1953, P. L. 1445, relating to prison breach: 18 PS §4309?

Second: The court erred in sustaining the Commonwealth's objection to defendant's offer which tended to prove illegality of defendant's arrest and commitment.

We will dispose of the second question first. The only motion pending before the court is a motion in arrest of judgment. Such a motion does not properly raise errors in rulings upon evidence, but if it did our courts have already held that although a defendant may have been erroneously committed to jail or penitentiary, he cannot raise the question as to the regularity of his sentence or commitment by escaping from the place of his confinement. Commonwealth ex rel. v. Francies, 73 Pa. Superior Ct. 285, 289-290:

"Defendants in criminal cases are now entitled to appeal, as matter of right, in every case in which there has been an error in a sentence to imprisonment. They are not, however, entitled to raise any question as to the regularity of the sentence by breaking the jail or the penitentiary, as such a proceeding frequently involves danger to the lives of the officers of the prison."

Commonwealth ex rel. v. Ashe, 142 Pa. Superior Ct. 396, 402:

"Even if his sentence in Washington County for robbery might have been reversed on appeal, or set aside on habeas corpus, for defects of substance leading up to his plea of guilty, it would, nevertheless, have been effective until so reversed or set aside, and breaking or escaping from the penitentiary while confined under it would be a crime punishable under section 3 of the Criminal Code of 1860, P. L. 382,

even though the sentence which he was serving at the time of his escape might afterwards be set aside.

"The statute specifically provides that, if a person *charged* with an indictable offense, and arrested and imprisoned in consequence thereof, shall break prison and escape while awaiting trial, or shall break prison without actually escaping, he shall be guilty of a misdemeanor and punished accordingly; and this is the case even though on his subsequent trial he should be acquitted of the crime for which he was originally arrested and imprisoned. It would follow that if imprisoned in consequence of a conviction and sentence, breaking and escaping from the prison or penitentiary would likewise be a misdemeanor, even though the conviction on which he was originally imprisoned should be subsequently reversed or set aside."

Commonwealth ex rel. v. Ashe, 142 Pa. Superior Ct. 403, 406:

"We have ruled that although a prisoner may be confined in the penitentiary under a sentence which would be reversed or set aside on appeal or writ of habeas corpus, if he breaks penitentiary and escapes, he is guilty of a misdemeanor and is punishable under the provisions of the Penal Code relative to breaking and escaping the penitentiary: Com. ex rel. Banky v. Ashe, supra; Com. ex rel. v. Francies, 73 Pa. Superior Ct. 285. And the last named case holds that the original sentence is effective until set aside; and that when so set aside, the sentence for breaking and escaping prison will commence and date from the entering of the order setting aside the prior sentence."

Defendant's first point is that the evidence did not prove a violation of the present act relating to prison breaks, which reads as follows:

"Any person undergoing imprisonment who breaks prison and escapes, . . . is guilty of prison breach, a felony . . ."

"The word 'imprisonment', as used in this section, means actual confinement in any penal or correctional institution located in this Commonwealth, or any restraint by lawful authority pursuant to a court order or after conviction of any crime": 18 PS §4309.

The burden of defendant's argument is that the above quoted act does not mention or refer to the person charged with an indictable offense who is in the prison waiting further action. Defendant's position is that imprisonment even though on an indictable offense before action by the grand jury was not confinement, nor restraint by lawful authority pursuant to a court order, or after conviction of a crime. Defendant further argued that it cannot be successfully maintained that escape from confinement whether lawful or not is a felony. In the history of English jurisprudence it became a felony to escape from jail no matter for what cause defendant was in jail.

"It appears, that at common law, it was held, that if a prisoner, whatsoever the cause was, for which he was committed, had broken the king's prison and escaped, or even conspired to break it, it was felony; whether the prisoner was held for treason, felony, or the most insignificant trespass, and whether he were actually within the walls of a prison or only in the stocks, or even in the custody of any person who had lawfully arrested him, he was still punishable as a felon": Commonwealth v. Miller, 2 Ashmead 61-62.

The above case is an interesting historical dissertation on the subject of the law of prison breach as it stood before any statute was passed. And what the court held in that case was:

"Therefore, I hold, that where a party is indicted for the original felony, and imprisoned thereupon: or where a person is imprisoned upon a lawful warrant of commitment, from a justice of the peace, under

his hand and seal, setting forth the cause for which he is taken and imprisoned, plainly and distinctly to be a felony, of a particular species set forth, and directing him to be kept and detained until he be delivered by due course of law, whereupon he breaks prison and escapes; it is not necessary to set forth, or aver in the indictment for breach of prison, that a felony was done, or that there was just cause to suspect the prisoner, or to prove it; but only the substance of the indictment or mitimus, and the breach of prison and escape. I class lawful commitments by a justice of the peace with imprisonments by a capias upon an indictment or appeal, because, in my opinion, such commitments constitute at once a well grounded imprisonment."

The Supreme Court of the United States in Commonwealth of Pennsylvania, ex rel. v. Ashe, 302 U. S. 51, on page 53, says:

"The law has long recognized a relation between punishment for breach of prison and the offense for which the prisoner is held, and it has more severely punished prison breaking by one undergoing imprisonment for grievous crime than if done by one held for a lesser offense. Prior to the statute *de frangentibus prisonam* of 1 Edw. II (1307) every prison breaking by the offender himself, whatever the crime for which he was committed, was a felony, punishable by 'judgment of life or member.' This severity was mitigated by the statute. It forbade that judgment unless the breaking was by one committed for a capital offense. Breach and escape by one held for felony continued to be dealt with as felony; but, if committed by one confined for an inferior offense, was punishable as a high misdemeanor by fine and imprisonment."

It is therefore well established that in the absence of any statute at all, defendant would be guilty of

crime if he escaped from jail no matter what the nature of the commitment. The nature of the commitment would go only to the question of punishment. With this history before us it is clear that the Act of 1939 did not cover the entire subject of prison breach because the Act of 1939 covered only prison breach after imprisonment of one charged with an indictable offense or after conviction of an offense other than murder. But prison breach was nevertheless an offense by the common law of Pennsylvania, even though the person was in prison charged with a summary conviction.

On first reading the Act of July 29, 1953, P. L. 1445, 18 PS §4309, seems to narrow the types of acts constituting statutory prison breach, because the Act of 1953 entirely omitted the words: "Whoever, being charged with an indictable offense, breaks prison," etc., and substituted: "Any person undergoing imprisonment who breaks prison," etc. But, having in mind the history of prison breach as above quoted, it becomes apparent that what the Act of 1953 did was to broaden the offenses constituting prison breach by the definition of the word "imprisonment", namely making imprisonment equal to actual confinement in any penal or correctional institution *or* any restraint by lawful authority, pursuant to court order. What this last phrase refers to is escape while in custody but while not actually in prison. Under the present act actual imprisonment includes imprisonment on a justice of the peace commitment for crimes less than indictable offenses, namely summary convictions. The Act of 1953 is now broad enough to cover all of the common law prison breaches. And defendant's actions clearly constitute prison breach within the definition of the Act of 1953.

Now, April 2, 1957, the motion in arrest of judgment is denied.